DELBELLO, DONNELLAN,
WEINGARTEN, WISE & WIEDERKEHR, LLP
*Proposed Counsel for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

FINGER LAKES CAPITAL PARTNERS, LLC,           Chapter 11
                                              Case No. 16-22112 (RDD)

                                  Debtor.
----------------------------------------------------------------X

## DECLARATION OF GREGORY SHALOV PURSUANT TO LOCAL RULE 1007-2

      GREGORY SHALOV, being duly sworn, deposes and says:

1.    I am the managing member of Finger Lakes Capital Partners, LLC (the "Debtor") and I submit this declaration pursuant to Rule 1007-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

2.    I have almost twenty years' experience in the financial industry. In 2003, I formed the Debtor, an asset management firm, along with my partner and friend V. Zubin Mehta.

3.    Shortly before the Petition Date, the Debtor was shocked to receive an adverse decision in a case it commenced against its largest investment partner. Like the seminal *Texaco* case, the Debtor needs to protect its otherwise viable business while challenging what it believes is a decision that is unfounded in the law. The decision purports to modify the relevant operating agreement between the Debtor's investment partner and the Debtor by, among other things, permitting that investment partner to keep the Debtor's agreed upon share (in excess of $6

1

million) of enormous profits from one investment vehicle (discovered and brought to realization by the Debtor, myself and Mr. Mehta) and instead to apply the funds to losses that the investment partner incurred in other, wholly unrelated investment vehicles. This modification is directly contrary to the clear, unambiguous language of the relevant operating agreement. A notice of appeal was filed prior to the petition date. The Debtor intends to swiftly and vigorously prosecute the appeal and emerge from bankruptcy as soon thereafter as possible.

## Investment Background

4.  Between 2004 and 2008 the Debtor partnered with Lyrical Opportunity Partners, L.P. ("Lyrical") to invest in five portfolio companies, each operating in different industries. Mr. Mehta and I identified each opportunity, negotiated the terms, and brought each opportunity to Lyrical. As is common in our industry, the Debtor managed the portfolio companies, each through a special purpose vehicle owned by the Debtor and Lyrical. The Debtor received commensurate management fees and, as is also common in these investment arrangements, received "carried interest", which in our industry is a term of art for an equity interest that the manager of an investment receives as additional compensation for locating and managing the investment.

5.  A dispute with Lyrical over distribution of more than $30 million in realized profits from the most lucrative of Debtor sponsored, Lyrical investments is the direct cause of the Debtor's chapter 11 filing.

6.  The Debtor and Lyrical have membership interests in five special purpose vehicle investment companies, each bearing the name of one of the famous New York Finger Lakes:

| Company Invested In | Company's Operations | Special Purpose Vehicle for Investment |
|---|---|---|
| Performance Trailers, Inc. ("Performance") | Designed and manufactured trailers for recreational boats | Canandaigua Lake Acquisition LLC |
| Tiber Industries, Inc. ("Tiber") | Manufactured industrial filters and pumps | Seneca Lake Acquisition LLC |
| Portadam, Inc. ("Portadam") | Manufactured cofferdams which are structures that allow water to be pumped out creating a dry area for work to be performed such as building oil platforms or bridges | Keuka Lake Acquisition LLC |
| Revolabs, Inc. ("Revolabs") | Developed and manufactured wireless conference phones and microphone systems | Honeoye Lake Acquisition LLC |
| Rethink Autism, Inc. ("Rethink") | Developed online platform to help special needs individuals | Owasco Lake Acquisition LLC |

**Performance, Tiber and Portadam**

7. In 2004, the Debtor and Lyrical made investments in Performance, Tiber and Portadam. These three portfolio companies initially struggled. In 2006, we formed Finger Lakes Debt Partners, LLC ("Debt Partners") in order to fund, respectively, operating capital to the struggling Performance, Tiber and Portadam companies. Lyrical and others provided funding to Debt Partners which in turn made secured loans to those companies, a relatively safer investment than simply purchasing equity.

8. By late 2006, Performance was doing so poorly, it agreed to a "friendly foreclosure".

9. Tiber was adversely effected by the economic crash of 2008, and appears unlikely to recover or to repay its loans to Debt Partners.

10. Portadam was also hit hard by the downturn in the economy, but benefitted from the fracking boom in 2011 and 2012 and has refinanced the loans to Debt Partners. After the fracking

3

boom, Portadam's CEO sought to sell the company, but efforts were not successful. Eventually, Lyrical took control and arranged for an assignment for the benefit of creditors.

**Revolabs**

11.    In late 2005, we identified Revolabs as the next investment. Revolabs ultimately proved to be a "home run".

12.    In March 2014, the company was sold resulting in <u>over $31 million net available for distribution to the Debtor and Lyrical</u>. The Debtor asserted that under the express terms of the controlling operating agreement between the Debtor and Lyrical, it was entitled to at least $6 million dollars of the available funds. However, Lyrical refused to turn over the funds. By June 2014, the Debtor was forced to sue Lyrical seeking distribution of the proceeds of the sale. The lawsuit was brought in the Delaware Chancery Court in an action entitled *Finger Lakes Capital Partners, LLC v. Honeoye Lake Acquisition LLC and Lyrical Opportunity Partners, L.P.*, C.A. No. 9742-VCL (the "<u>Delaware Action</u>").

13.    In the Delaware Action, Lyrical counterclaimed, arguing that (a) the gain from the Revo sale should be reduced by the losses suffered by Lyrical in other Debtor sponsored investments before a determination of Debtor's carried interest, pursuant to an alleged prior oral "clawback" agreement between Debtor and Lyrical; and (b) pursuant to a prior term sheet between the Debtor and Lyrical, the Debtor owed Lyrical a share of the management fees previously received by it. In other words, Lyrical argued that the court should look outside the clear and unambiguous terms of the Revolabs operating agreement entered into between the Debtor and Lyrical to award damages to Lyrical under the term sheet and to calculate the relevant distribution, despite the fact that the plain language of the operating agreement makes crystal clear that it supersedes all prior agreements. Instead, the Court found enforceable both the terms sheet and the alleged prior oral claw back agreement that modifies the operating agreement by decreasing the amount of Debtor's carried

interest under the operating agreement.

14. The Delaware court, after improperly applying the "claw back," awarded net damages to Lyrical in the amount of $1,002,903.77 and determined the claw back wiped out the Debtor's $6,000,000+ entitlement under the Revolabs operating agreement.

15. The Debtor strenuously disagrees with the Delaware court's decision, has filed a notice of appeal, and intends to vigorously pursue the appeal during the chapter 11 case. Quite simply put, the Delaware court was wrong on the law and has ignored one of the most basic concepts of contract law – extrinsic evidence is inadmissible in interpreting an unambiguous provision of a written agreement. Further, a provision in an agreement to the effect that the agreement supersedes all prior agreements and understandings is enforceable as a matter of law, in accordance with its terms.

16. Thus, the Debtor believes it will prevail in its appeal entitling it to over $6 million in profits from the successful Revolabs investment conceived by the Debtor. Admittedly, the Debtor is "David" to Lyrical's "Goliath", a well-financed investment entity, but at the end of the day the Debtor believes that the well-established rule of law should prevail.

**Rethink**

17. Finally, in 2008, the Debtor identified Rethink as an attractive investment. Lyrical has taken control of the investment, as it was entitled to do under the Rethink operating agreement. The Debtor is hopeful this investment will also yield a positive result, one day entitling the Debtor to carried interest from this investment.

**The Retaliatory Action on a Promissory Note**

18. In June 2015, a week after the Revolabs trial concluded, Lyrical's principal Jeffrey Keswin ("Keswin") commenced a retaliatory lawsuit against the Debtor, Mr. Mehta and me in Supreme Court, New York County (the "Retaliatory Action").

19. The lawsuit, which was commenced long after the statute of limitations had expired, seeks payment of $400,000 alleged loaned to Debtor, plus interest thereon, allegedly pursuant to a 2006 demand promissory note that purports on its face to be in the amount of $1,000,000. The promissory note is signed by Debtor, as Payor, and Zubin Mehta and myself, as guarantors. In the lawsuit Keswin alleges that the statute of limitation has not run on the alleged 2006 promissory note because in 2009, a spreadsheet attached to an email was sent by the Debtor to the chief financial officer of Lyrical, not to Keswin, even though, among other things, the spreadsheet does not mention the promissory note and states in a footnote that the $400,000 loan will be repaid by us, personally out of our carried interest, not by the Debtor. Keswin testified that he never read the footnote.

20. I believe the lawsuit was commenced by Keswin, who has all the resources in the world to pay attorneys, in retaliation for the Debtor suing Lyrical to recover the Debtor's agreed upon share of the Revolabs profits. I believe Keswin brought this bogus lawsuit to bury us in legal fees that we can't afford.

21. It wasn't until nine years after the 2006 note that on June 17, 2015, Keswin filed a UCC-1 financing statement alleging he has a security interest in certain misstated assets of the Debtor. This was obviously done in anticipation of his twisted litigation premise that ignores the fact that the action is barred by the statute of limitations. Why do I think the UCC-1 financing statement was nothing but a litigation strategy? Because it took nine years to file the UCC-1, but only seven days before the complaint in the Retaliatory Action was filed.

22. Initially, the New York court stayed the Retaliatory Action pending the outcome of the related Revolabs case pending in Delaware. The Delaware court subsequently declined to adjudicate the alleged note dispute, deferring to the New York court.

23. On December 2, 2015, the New York court heard arguments on Keswin's motion for

6

summary judgment and the defendants' cross-motion for summary judgment. Keswin's motion was denied outright upon a finding that "at a minimum there are issues of fact which preclude granting summary judgment in lieu of complaint". The Defendants' motion was denied "*without prejudice to renewal* because there are issues of fact with respect to the statute of limitations defense".

24.     The Debtor will seek to dispose of the Retaliatory Action claim in the context of its chapter 11 case.

### Purpose of the Chapter 11 Filing

25.     The Debtor's litigation counsel believes there are substantial grounds to appeal and reverse the Revolabs decision in the Delaware Action.

26.     The Debtor will continue to operate and pay its expenses from funds on hand.

27.     The Debtor's creditors, mostly incurred due to Lyrical's litigation and related actions consist of professionals, credit card companies, family members and other investors. The Debtor believes its needs and interests will best be served by the continued possession of its property and management of its affairs as debtor-in-possession under Chapter 11 until confirmation of a reorganization plan.

### INFORMATION REQUIRED BY LOCAL BANKRUTPCY RULE 1007

28.     In addition to the foregoing, Local Bankruptcy Rule 1007-2 requires certain information related to the Debtor, which is set forth below.

**Local Rule 1007-2(a)(1)**

29.     The Debtor is located at 168a Irving Avenue, Port Chester, New York 10573.

**Local Rule 1007-2(a)(2)**

30.     This case was not originally commenced under Chapter 7 or 13 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

7

**Local Rule 1007-2(a)(3)**

31. Upon information and belief, no committee was organized prior to the order for relief in this Chapter 11 case.

**Local Rule 1007-2(a)(4)**

32. A list of the names and addresses of the Debtor's 20 largest unsecured claims, excluding those who would not be entitled to vote at a creditors' meeting and creditors who are "insiders" as that term is defined in 11 U.S.C. Section 101(31) is annexed hereto as **Exhibit A.**

**Local Rule 1007-2(a)(5)**

33. The Debtor has one disputed secured creditor and two undisputed secured creditors:

Disputed

Jeffrey Keswin
500 West End Avenue, #6A
New York, New York 10024
UCC Filed: June 17, 2015
$400,000

Undisputed

Barry Shalov and Joan Shalov
9 Hobart Lane
Westhampton Beach, NY 11978
UCC Filed: July 21, 2015
$1,916,956.08

Dr. Jagat Mehta
12 Chelsea Park
Pittsfield, NY 14534
UCC Filed: August 14, 2015
$549,898.05

**Local Rule 1007-2(a)(6)**

34. A balance sheet will be filed separately.

**Local Rule 1007-2(a)(7)**

8

35. There are no publicly held securities of the Debtor.

**Local Rule 1007-2(a)(8)**

36. None of the Debtor's property is in the possession of any custodian, public officer, mortgagee, pledge, assignee of rents, or secured creditor, or any agent for such entity.

**Local Rule 1007-2(a)(9)**

37. The Debtor leases offices at 168a Irving Avenue, Port Chester, New York 10573 pursuant to a written lease agreement commencing February 18, 2014 and ending April 30, 2021.

**Local Rule 1007-2(a)(10)**

38. The Debtor's assets and records are located at its principal place of business at 168a Irving Avenue, Port Chester, New York 10573.

**Local Rule 1007-2(a)(11)**

39. The Debtor is a party to three civil actions:

*Finger Lakes Capital Partners, LLC v. Honeoye Lake Acquisition LLC and Lyrical Opportunity Partners, L.P.,* Court of Chancery, the State of Delaware, Index No. 9742-VCL

*Jeffrey Keswin v. Finger Lakes Capital Partners, LLC, V. Zubin Mehta and Gregory Shalov,* Supreme Court, New York County, Index No. 156356/2015

*Whitten v. Finger Lakes Capital Partners, LLC, et al.,* Circuit Court of the Eighteenth Judicial Circuit, Brevard County, Florida, Case No. 05-2008-CA-38644

**Local Rule 1007-2(a)(12)**

40. The Debtor's senior management consists of Gregory Shalov, manager, and V. Zubin Mehta, manager.

**Local Rule 1007-2(b)(1) and (2)**

41. The Debtor's estimated monthly payroll to employees for the thirty (30) day period following the Chapter 11 petition is zero ($-0-)

42. The Debtor's estimated monthly payroll and payments to officers, stockholders, and directors for the thirty (30) day period following the Chapter 11 petition is $3,980 in the form of expense reimbursement.

**Local Rule 1007-2(b)(3)**

43. The Debtor estimates that it will operate at a loss in the 30 day period following the filing of the chapter 11 petition. A 30-day budget is attached as **Exhibit B**.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

*/s/ Gregory Shalov*
By:_____
Gregory Shalov, Manager