DELBELLO, DONNELLAN,
WEINGARTEN, WISE & WIEDERKEHR, LLP
*Proposed Counsel for the Debtor*
One North Lexington Avenue
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Dawn Kirby, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

FINGER LAKES CAPITAL PARTNERS, LLC,        Chapter 11
                                          Case No. 16- 22112 (RDD)
                        Debtor.
-----------------------------------------------------------------X

**MOTION FOR AN ORDER (I) SCHEDULING
A PRELIMINARY HEARING ON DEBTOR'S MOTION REQUESTING
USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363(c)(2) AND
BANKRUPTCY RULE 4001, (II) AUTHORIZING THE DEBTOR'S USE
OF CASH COLLATERAL ON AN INTERIM BASIS AND PROVIDING
ADEQUATE PROTECTION THEREFORE PURSUANT TO 11 U.S.C.
§§361 AND 362, AND (III) SCHEDULING A FINAL HEARING**

Finger Lakes Capital Partners, LLC, the above captioned debtor and debtor-in-possession (the "Debtor"), by its proposed attorneys, DelBello, Donnellan, Weingarten, Wise & Wiederkehr, LLP and its Member, Gregory Shalov, files this motion (the "Motion") for entry of an Order Scheduling a Preliminary Hearing on the Debtor's Motion Requesting the Use of Cash Collateral, (II) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. §363 and Providing Adequate Protection Therefor Pursuant to 11 U.S.C. §§361 and 362 and (III) Scheduling a Final Hearing, respectfully state and represent as follows:

1

**Jurisdiction**

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 105(a), 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

3. On January 29, 2016, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of its property and the management of its business affairs as debtors-in-possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed.

4. The Debtor is an asset management firm.

5. Shortly before the Petition Date, the Debtor was shocked to receive an adverse decision in a case it commenced against its largest investment partner, Lyrical Opportunity Partners, L.P. ("Lyrical"). Like the seminal *Texaco* case, the Debtor needs to protect its otherwise viable business while challenging what it believes is a decision that is unfounded in the law. The decision purports to modify the relevant operating agreement between Lyrical and the Debtor by, among other things, permitting Lyrical to keep the Debtor's agreed upon share (in excess of $6 million) of enormous profits from one investment vehicle (discovered and brought to realization by the Debtor and its principals) and instead to apply the funds to losses that Lyrical incurred in other, wholly unrelated investment vehicles. This modification is directly

2

contrary to the clear, unambiguous language of the relevant operating agreement. A notice of appeal was filed prior to the petition date. The Debtor intends to swiftly and vigorously prosecute the appeal and emerge from bankruptcy as soon thereafter as possible.

## The Jeffrey Keswin Pre-Petition Disputed Secured Debt

6. Jeffrey Keswin ("Keswin") is the owner and principal of Lyrical.

7. On or about August 1, 2006, the Debtor executed a Secured Promissory Note in favor of Keswin (the "Disputed Note") in the principal amount of $1,000,000 at an interest rate equal to the lesser of twenty percent (20%) or the maximum nonusurious interest rate permitted under applicable law. The principal and interest were due in the aggregate amount of $1,200,000 on the Maturity Date, defined as July 31, 2007. A copy of the Disputed Note is annexed as **Exhibit A**.

8. No amount of the principal was ever funded to the Debtor. Thus, no payments were ever made by the Debtor in connection with the Disputed Note, either on the July 31, 2007 Maturity Date, or at any other time.

9. The Disputed Note purports to grant Keswin a security interest in the following collateral:

> Any assets held by Issuer, its Principals, affiliates, and assigns, including, but not limited to Issuer's $23,531.87 investment in Seneca Lake Acquisition LLC, its $50,000 investment in Keuka Lake Acquisition LLC, its $100,000 investment in Honeoye Acquisition LLC, and its right to receive a carried interest on any investments, whether made by Holder or any other party (the "Stock").

10. However, on or about June 17, 2015, almost *eight years* after the Maturity Date of the Disputed Note, a UCC-1 Financing Statement (the "Disputed UCC-1 Financing Statement") was filed with the Secretary of State of Delaware, naming Keswin as the secured party and the Debtor as the debtor. The collateral description in Disputed UCC-1 Financing Statement is

3

almost identical to the collateral description in the Disputed Note, and states follows:

> Any assets held by Finger Lakes Capital Partners, LLC, its Principals, affiliates, and assigns, including, but not limited to Finger Lakes Capital Partners, LLC's $23,531.87 investment in Seneca Lake Acquisition LLC, its $50,000 investment in Keuka Lake Acquisition LLC, its $100,000 investment in Honeoye Acquisition LLC, and its right to receive a carried interest on any investments, whether made by Jeffrey Keswin.

A copy the Disputed UCC-1 Financing Statement is annexed as **Exhibit B.**

11. A few days later, on or about June 24, 2015, Keswin commenced an action against the Debtor and its principals by filing a Motion for Summary Judgment in Lieu of Complaint based upon the Disputed Note in the Supreme Court, New York County, Index No. 156356/2015.

12. The Hon. Barry R. Ostrager denied Keswin's motion outright, determining Keswin is not entitled to summary judgment in lieu of complaint because "at a minimum there are issues of fact which preclude granting summary judgment in lieu of complaint".

13. The Debtor and its principals cross-moved for summary judgment on, among other grounds, the statute of limitations defense. Not only was the principal never funded, the lawsuit was commenced more than six years after the Maturity Date of the Disputed Note.

14. Keswin opposed the cross-motion on the grounds, *inter alia*, that the statute of limitation had allegedly been extended by an October 2009 email that does not even mention the Disputed Note, but instead attaches a spreadsheet that contains a footnote referencing a loan to individuals Gregory Shalov and Zubin Mehta, the Debtor's principals. The attachment further references that said individuals' obligation to repay the loan is contingent upon them receiving "carry interest" in the event the Debtor receives same from one of its investments and is able to distribute those funds to the individuals.

15. Although the Debtor believes the email is irrelevant with respect to the Disputed

4

note, it was somehow enough for the court to deny the Debtor's cross-motion for summary judgment "*without prejudice to renewal* because there are issues of fact with respect to the statute of limitations defense".

16. Accordingly, it has been adjudicated that the Disputed Note and Disputed UCC-1 Financing Statement do not establish as a matter of law that Keswin is a secured creditor. The Debtor disputes that Keswin is a secured creditor and asserts he is not entitled to adequate protection.

17. No consideration was given to the Debtor for the Note. In addition, the Disputed UCC-1 Financing Statement was not filed contemporaneously with the subject Note and was filed within one year of the Petition Date. Keswin is an insider of the Debtor within the meaning of §101(31) of the Bankruptcy Code. The security interest is therefore voidable under §§547(b) and 548 of the Bankruptcy Code.

18. The Debtor is willing to grant Keswin replacement liens only to the extent that said liens are later determined to be valid, perfected and enforceable as of the Petition Date.

**The Shalov Pre-Petition Secured Debt**

19. On or about July 10, 2014, the Debtor entered into a Letter Agreement (the "Shalov Loan Agreement") with Barry Shalov and Joan Shalov (the "Shalovs"), parents of the Debtor's member Gregory Shalov, memorializing two loans from the Shalovs to the Debtor, the first loan in the principal amount of $927,251.51, and the a second loan in the principal amount of $989,704.57, for a total amount due in the amount of $1,916,956.08. A copy of the Shalov Agreement is annexed as **Exhibit C.**

20. On or about May 22, 2015, the Debtor entered into Secured Promissory Note with the Shalovs (the "Shalov Secured Note") pursuant to which substantially contemporaneous and

5

subsequent advances were made, on or about May 22, 2015 in the amount of $200,000; on or about July 21, 2015 in the amount of $235,000; on or about September 14, 2015 in the amount of $200,000; on or about October 14, 2015 in the amount of $66,500; and on or about October 14, 2015 in the amount of $55,000, for a total outstanding principal advanced in the amount of $756,500 at an interest rate equal to twenty percent (20%). The Shalov Secured Note is annexed as **Exhibit D**.

21. On or about May 22, 2015, the Debtor entered into a Security Agreement (the "Shalov Security Agreement") which secured the Debtor's obligations under the Shalov Note and the Shalov Loan Agreement by granting the Shalovs a lien on certain of the Debtor's property (the "Shalov Collateral"). A copy of the Shalov Security Agreement is annexed as **Exhibit E**.

22. The grant of security by the Debtor to Shalovs pursuant to the Shalov Security Agreement was perfected by the filing of five UCC-1 financing statements (the "Shalov UCC-1 Financing Statements") filed on July 21, 2015. The Shalov UCC Financing Statement describes the collateral as "All Assets". Copies of the Shalov UCC-1 Financing Statements are annexed as **Exhibit F.**

23. Although the Shalov UCC-1 Financing Statements was not filed contemporaneously with the Shalov Loan Agreement, they were filed contemporaneously with the Shalov Secured Note under which the Shalovs provided additional financing in the amount of $756,500. The Debtor therefore believes the Shalovs have several new value and fair consideration defenses against any potential avoidance claim under §547(b) of the Bankruptcy Code.

24. The Shalovs have advised Debtor's counsel that they consent to the use of cash

collateral. They do not seek adequate protection payments at this time. They only seek replacement liens to the extent that said liens are valid, perfected and enforceable as of the Petition Date, to which the Debtor has no objection.

### The Mehta Pre-Petition Secured Debt

25. On or about July 10, 2014, the Debtor entered into a Letter Agreement (the "Dr. Mehta Loan Agreement") with Dr. Jagat S. Mehta, MD, ("Dr. Mehta"), the father of the Debtor's member V. Zubin Mehta, memorializing four loans from Dr. Mehta to the Debtor, the first loan in the principal amount of $300,000.00 as of September 28, 2006, the second in the principal amount of $99,898.05 as of December 31, 2006, the third in the principal amount of $125,000.00 as of October 26, 2007, and the fourth loan in the amount of $25,000.00 as of December 3, 2007, for a total amount due in the amount of $549,898.05. A copy of the Mehta Loan Agreement is annexed as **Exhibit G.**

26. On or about May 22, 2015, the Debtor entered into a Security Agreement (the "Dr. Mehta Security Agreement") which secured the Debtor's obligations under the Dr. Mehta Loan Agreement by granting the Shalovs a lien on certain of the Debtor's property (the "Dr. Mehta Collateral"). The Dr. Mehta Security Agreement is annexed as **Exhibit H**.

27. Upon information and belief, the grant of security by the Debtor to Dr. Mehta pursuant to the Dr. Mehta Security Agreement was allegedly perfected by the filing of a UCC-1 financing statement and name correction (the "Mehta UCC-1 Financing Statement") filed on August 14, 2015. The Mehta UCC Financing Statement describes the collateral as "All Assets". A copy of the Dr. Mehta UCC-1 Financing Statement is annexed as **Exhibit I.**

28. Dr. Mehta has advised Debtor's counsel he consents to the use of cash collateral. He does not seek adequate protection payments at this time. He seeks replacement liens only to

the extent that said liens are valid, perfected and enforceable as of the Petition Date, to which the Debtor has no objection.

**Relief Requested**

29. The Debtor submits this Motion pursuant to Bankruptcy Code §363(c)(2)(B) and 361 and 362 and Bankruptcy Rule 4001(b) with respect to the Debtor's request for authority to use property which may constitute Collateral in which Keswin, the Shalovs and Dr. Mehta may assert a security interest, substantially in accordance with the terms and conditions set forth in the proposed Interim Order (the "Order") annexed hereto as **Exhibit J.** The Debtor believes that the Shalovs and Dr. Mehta are the only parties that may have a perfected security interest in the Debtor's property which may constitute, *inter alia*, Cash Collateral.

30. The proposed Order grants the Debtor the authority to use the Collateral pursuant to Bankruptcy Code §§363 (c)(1) and (2) and Bankruptcy Rule 4001(c) to the extent necessary to continue the operation of its business and to preserve the value of its estate during the course of the Chapter 11 case.

31. Section 363(a) of the Bankruptcy Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

32. Section 363(c)(1) of the Bankruptcy Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

8

33. Section 363(d) of the Bankruptcy Code provides as follows:

> "(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

34. Accordingly, pursuant to § 363(c)(2) of the Bankruptcy Code, the consent of the Secured Creditors or authority from this Court is required to use Collateral in which they may hold perfected security interests.

### Adequate Protection

35. The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994); In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr, D.N.J. 1986), citing In re Coors of the Cumberland, 19 B.R. 313 (Bankr. M.D. Tenn. 1982). See also, In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

36. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

9

37. The Order provides that, as adequate protection for the Debtor's use of The Shalovs, Dr. Mehta's and potentially (but disputed) Keswin's Collateral and in consideration for the use of the Collateral, the Debtor shall grant the Shalovs, Dr. Mehta and Keswin replacement liens in all of the Debtor's pre-petition and post-petition assets and proceeds, including the Collateral and the proceeds of the foregoing, to the extent that the Shalovs, Dr. Mehta and Keswin had valid security interests in said pre-petition assets on the Petition Date and in the continuing order of priority that existed as of the Petition Date (the "Replacement Liens").

38. The Replacement Liens shall be subject and subordinate only to: (a) United States Trustee fees payable under 28 U.S.C. Section 1930 and 31 U.S.C Section 3717; (b) professional fees of duly retained professionals in this Chapter 11 case as may be awarded pursuant to Sections 330 or 331 of the Code or pursuant to any monthly fee order entered in the Debtor's Chapter 11 case; (c) the fees and expenses of a hypothetical Chapter 7 trustee to the extent of $10,000; and (d) the recovery of funds or proceeds from the successful prosecution of avoidance actions pursuant to sections 502(d), 544, 545, 547, 548, 549, 550 or 553 ("Avoidance Actions") of the Bankruptcy Code (collectively, the "Carve-Outs").

39. The Debtor submits that, in order to preserve the Debtor's estate and ensure the viability of the Debtor during the Chapter 11 case, the Shalovs, Dr. Mehta and Keswin should be granted Replacement Liens with the same nature, extent and validity of their pre-petition liens, subject to further investigation by the Debtor, any creditors, or committee appointed in the Debtor's Chapter 11 case.

## The Budget

40. The Debtor proposes to use Collateral only for ordinary and necessary limited operating expenses in connection with the maintenance of the Debtor's operations substantially

10

in accordance with the 6-week week operating budget annexed hereto as **Exhibit K** (the "Budget"). The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of operating the Debtor's business for the period set forth in the Budget. The Debtor believes that the use of Collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay the limited administrative expenses as they become due and payable during the period covered by the Budget.

### LEGAL BASIS FOR RELIEF REQUESTED

41. Typically, a motion for authority to use cash collateral may commence no earlier than 14 days after service of the motion pursuant to Bankruptcy Rule 4001(b)(2). However, that same rule provides that the court may conduct a preliminary hearing before such 14 day period expires under certain circumstances.

42. Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

> (c) *Reduction.*
>
> (1) *In General.* Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.
>
> (2) *Reduction Not Permitted.* The court may not reduce the time for taking action under Rules 2002 (a)(4) and (a)(8), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 8002, and 9033(b).

43. Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear an application such as the Application herein on shortened notice, for cause shown.

44. The Debtor respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Application and refers the Court to the Affirmation of Jonathan S. Pasternak, Esq. pursuant to Local Bankruptcy Rule 9077-1(a) in support of an

order scheduling hearing on shortened notice, submitted herewith.

### Request For Waiver Of Stay

45.    The Debtor further seeks a waiver of the stay of the effectiveness of the Order that may be imposed by any applicable Bankruptcy Rule. As set forth above, the use of Collateral is essential to prevent potentially irreparable damage to the Debtor's value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

### Notice

46.    This Motion is being served on notice to Keswin, the Shalovs and Dr. Mehta, all other parties asserting secured claims against the Debtor, the United States Trustee and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d), including but not limited to the Debtor's twenty (20) largest unsecured creditors.

**WHEREFORE**, the Debtor respectfully requests use of cash collateral in accordance with the terms of the annexed proposed Order and this Application, together with such other and further relief as is just and proper under the circumstances.

Dated: White Plains, New York
       January 29, 2016

                       Respectfully submitted,

                       DELBELLO DONNELLAN
                       WEINGARTEN WISE & WIEDERKEHR, LLP
                       *Proposed Attorneys for the Debtor*
                       One North Lexington Avenue
                       White Plains, New York 10601
                       (914) 681-0200

                       By: */s/ Jonathan S. Pasternak*
                            Jonathan S. Pasternak