Bijan Amini
Avery Samet
Jeffrey Chubak
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

*Attorneys for Lyrical Opportunity Partners, L.P.
and Jeffrey Keswin*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>FINGER LAKES CAPITAL PARTNERS, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 16-22112 (RDD)<br><br>Re: ECF Nos. 15, 16, 30 |
|---|---|

**LYRICAL OPPORTUNITY PARTNERS, L.P.'S AND
JEFFREY KESWIN'S REPLY IN SUPPORT OF MOTION
TO DISMISS OR CONVERT CHAPTER 11 CASE**

Lyrical Opportunity Partners, L.P. ("Lyrical") and Jeffrey Keswin ("Keswin") file this reply in support of their motion to dismiss or convert the above-captioned chapter 11 case, filed March 4, 2016 [ECF No. 15] (the "Motion"), and respectfully state:[1]

**PRELIMINARY STATEMENT**

1. Lyrical and Keswin ("Movants") moved to dismiss or convert this bankruptcy case on two grounds. First, the Movants asserted that cause existed under Section 1112(b)(4)(A) because the estate will continue to incur substantial losses without any reasonable likelihood of rehabilitation. As described in Movants' opening brief, the Debtor proposes to operate at a sustained negative cash flow. In addition, the Debtor's "boundless confidence" in its state court

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

appeal does not constitute a reasonable likelihood of rehabilitation under Second Circuit and recent bankruptcy court precedent. The Debtor's opposition fails to contest this point.

2. Second, the Movants asserted that cause existed because the Chapter 11 case was commenced in bad faith. The Movants argued that this case meets all of the factors employed regularly by bankruptcy courts in this circuit when addressing Chapter 11 cases filed for the purpose of continuing state court litigation on appeal. In particular the Movants argued that (a) this is essentially a two-party dispute, something that the Debtor has repeatedly admitted, (b) there is no ongoing, operating business to protect and (c) the case is permeated with insider transactions which merit serious investigation.

3. In response, the Debtor fails to engage the cases relied upon by the Movants. Instead, the Debtor principally relies upon its own claimed good intentions and the purported bad faith of the Movants. The Debtor has misread the cases calling for "subjective" inquiry in the Debtor's bad faith – subjective does not mean that the Debtor is evil or malicious, but only that the evidence indicates the case was not filed for a proper reorganization purpose.

4. This case presents a classic two-party dispute where insiders are attempting to use the bankruptcy process to preserve their position at the expense of the Debtor's nearly exclusive, third-party creditor. The Court should dismiss or appoint a trustee to investigate the insider transactions and preserve whatever estate assets are available for distribution.

## REPLY TO STATEMENT OF FACTS

5. The Debtor claims that the Motion is "riddled with inaccuracies" (Opp. Br. ¶3). Nevertheless, the Debtor's fact section is rife with rhetorical questions and is largely devoid of citations to evidence. The Debtor does repeatedly cite to the Chancery Decision and to the Debtor's 341 testimony, mainly to restate the same facts but with a gloss more favorable to the

Debtor. Both documents speak for themselves. In this Reply, Movants focus solely upon the most relevant factual issues.

Is This a Two-Party Dispute?

6. The Debtor claims this is not a two-party dispute because it has "many third party unsecured creditors, it has other lawsuits." (Opp. Br. ¶8). This is incorrect. The Debtor scheduled six unsecured, non-Lyrical unsecured claims. Five of the claims are undisputed and total just $170,000: (a) the Debtor's principal's sister, (b & c) the Debtor's lawyers from the Lyrical litigation, who are proposed counsel here, (d) the Debtor's accountant and (e) a credit card. (Schedules E/F [ECF No. 8]). The Debtor has described these debts as "mostly incurred due to Lyrical's litigation and related actions." (Shalov Decl. ¶27). By contrast, Lyrical has a $1 million unsecured claim, Keswin has a $1.4 million secured claim, Mehta' father asserts a $550,000 claim and Shalov's father asserts a $2.7 million claim. (Schedules D, E/F [ECF No. 8]).

7. The Debtor also scheduled a disputed, litigation claim asserted by the Whittens, which the Debtor asserts is not only frivolous but also long defunct and subject to dismissal for lack of prosecution. (341 Tr. at 29:24-30:21). The Debtor also asserts that it is indemnified from liability. (*Id.* at 29:14-20). Moreover, the Debtor's principal confirmed that the Whitten suit played no role in the Debtor's bankruptcy petition:

> Shalov: Well, the Whitten lawsuit is not a reason we are filing. We believe we're indemnified and it's a frivolous lawsuit. So I don't want to state at all that that has anything to do with this.
>
> U.S. Trustee: Okay
>
> Shalov: I mean, it's been going on for like, seven years.
>
> U.S. Trustee: So you're in mostly because of Lyrical then?
>
> Shalov: Yes.
>
> U.S. Trustee: Or only because of Lyrical.

        Shalov: Only because of Lyrical.

*Id.* at 30:17-31:2. *See also* Stay Relief Mot. [ECF No. 13] at ¶24 ("the [case] primarily involves only two parties, the Debtor and Lyrical").

Does the Debtor Have Ongoing Income or Other Business?

        8.      The Debtor claims that it made money in 2014 and in 2015 from the Revolabs sale (the distribution that is the subject of the Delaware Action) and $4,000 in January 2016 (a short-term consulting arrangement that the Debtor testified has ceased). (341 Tr. at 17:20-18:3, 43:6-13). The Debtor also claims that it holds a carried-interest in two portfolio companies, Rethink and Nourish Snacks, from which the Debtor may be entitled to remuneration in the event that these entities are sold for a profit in the future. (*Id.*) However, while the Debtor may own an economic interest, neither of these entities provide income to the Debtor. (*See* Cash Collateral Mot. at Ex. K (budget); Shalov Decl. at Ex. B (budget)).

        9.      The Debtor has not identified any business which it currently conducts or has plans to conduct. The Debtor admits that Lyrical took over the management of Rethink years ago and the Debtor itself has filed a pending motion (by notice of presentment) to transfer its role as manager of Nourish to another entity. (Opp. Br. ¶¶5, 20). Other than owning these potential future interests, the Debtor has not identified any other business that it conducts. It has no employees and has not identified any executory contracts other than a lease (a lease, which it claims, is paid by its portfolio companies). (Cash Collateral Mot. at Ex. K (budget); Shalov Decl. at Ex. B (budget); Schedule G [ECF No. 8]; Opp. Br. ¶19).

Are There Numerous Pre-Petition Transfers to Insiders?

        10.     The Debtor does not dispute the existence of numerous pre-petition transfers to insiders but instead characterizes them as entirely proper and beyond reproach. These include: (a) the 2015 transfer of security interests to Shalov's father for unsecured advances made on an

unspecified date before July 10, 2014; (b) the 2015 transfer of security interests to Mehta's father for 2006-2007 unsecured advances; (c) a loan between the Debtor and Shalov's wife; (d) a "pass-through" (document free) loan between Shalov's father, the Debtor and Jumphawk (an entity owned by Shalov and Mehta), but in which the Debtor asserts has it no other economic interests; (e) unspecified "expense reimbursements" which the Debtor has promised to disclose but has not; and (f) the FCPC preference transfers to an entity with almost the same name as the Debtor (FLCP) (*see* Motion ¶¶24, 29-32, 34), and which we have subsequently learned shares an address with another of the Debtor's insiders.[2]

11.    The Debtor asserts all of the facts regarding these transactions have been fully and accurately disclosed, sufficiently investigated and have been proven innocuous. Suffice it to say, and as discussed at length in the Motion, this is incorrect. The Debtor has refused disclosure into

---

[2] The FCPC issue clearly requires significant investigation. After being unable to identify FCPC at its 341 exam (just one of four preference period transferees) (341 Tr. at 43:22-44:23), the Debtor now states that FCPC is "**a** landlord in Port Chester, New York." (Opp. Br. ¶23), a curious claim considering that the Debtor testified that it does not pay rent and disclosed a different landlord on its schedules. (341 Tr. at 16:8-13). In any event, the Debtor's March 23, 2016 Notice of Presentment reveals that FCPC shares the same address as Mathew Grossman, the head of ALG Fund. (Notice of Presentment of Stipulation and Order [ECF No. 28] at Exh. 1 at Exh. A). Mr. Grossman is Nourish's executive officer and director and ALG is apparently the seed investor in Nourish. (*See id.*)

these transactions, taken inconsistent positions about them and has announced that it has no intention of challenging them.[3]

**Did Lyrical Bring This Motion in Bad Faith?**

12.     Although not relevant to any of the dismissal factors, the Debtor accuses Lyrical of bad faith in not agreeing to stipulate to the lifting of the automatic stay and of moving to dismiss or convert in bad faith. (Opp. Br. ¶27). This is false. Lyrical first informed the Debtor of its intention to bring this motion on February 22, 2016 and worked cooperatively with the Debtor to schedule the briefing and hearing of the Motion. (*See* Exhibit A attached hereto). On March 2, 2016, the parties executed and submitted a stipulation regarding the same. (*See* Stipulation and Order [ECF No. 12]). In addition, the Debtor repeatedly misrepresents Lyrical's position on the proposed lifting of the automatic stay. On February 10, 2016, counsel for Lyrical promptly responded to the Debtor's proposed stipulation by requesting to see the Debtor's motion for the retention of appeal counsel. (*See* Exhibit B attached hereto). The same day, the Debtor responded that it would promptly file such a motion. (*Id.*) Instead, the Debtor filed its motion to lift the stay on March 3, 2016 and did not file its motion to retain Kagen & Caspersen, lead counsel on the

---

[3] For example, the Debtor did not disclose the loan to Shalov's wife in its schedules (*contra* Opp. Br. ¶9(a)), has still never disclosed the true identify of FCPC (*see* note 2, above), and will not challenge the insider transactions with its principals' parents. (*See* Cash Coll. Mot. [ECF No. 3] at ¶¶23, 24; Shalov Decl. at ¶33). Furthermore, the Debtor has still failed to:

(1)     Disclose the prepetition transfers to its principals, even though this information was required by SOFA, Item 4 two months ago.

(2)     Provide the balance sheet required by Local Bankruptcy Rule 1007-2(a)(6), which would provide creditors with an inkling of how the Debtor's principals value the Debtor's interests in its portfolio companies, instead stating such balance sheet "will be filed separately" (Shalov Decl. at ¶34);

(3)     File a single monthly operating report, even though two are past due; or

(4)     Disclose prepetition payments to or fee arrangements with proposed counsel, in violation of Bankruptcy Code section 329(a) and Bankruptcy Rule 2016(b).

appeal, until March 23, 2016. (Stay Relief Mot. [ECF No. 13]; App. to Employ Kagen & Caspersen [ECF No. 24]).

## ARGUMENT

**I.      CAUSE EXISTS FOR DISMISSAL UNDER SECTION 1112(b)(4)(A)**

13.     Movants argued cause exists to dismiss or convert this case, within the meaning of Bankruptcy Code section 1112(b)(4)(A) because the Debtor is (a) incurring substantial losses and (b) has no reasonable likelihood of rehabilitating. (Motion at ¶¶39-40). The Debtor does not address this point in its opposition brief.

14.     The relevant inquiry on the first prong asks whether the Debtor is *currently* operationally insolvent, not whether there is some possibility the Debtor will generate enough income to repay expenses it is currently accruing. *In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) (cause exists where debtor has "post-petition negative cash flow and an inability to satisfy *current* expenses"); *In re Motel Props.*, 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004) (same).

15.     The Debtor's operational losses include (a) its proposed administrative expenses for the hourly fees of three law firms (the fourth is on a contingency/ hourly-under-a-settlement basis) plus reimbursement of the expenses of all four law firms and (b) its proposed budget of $5,525 per month.[4] The Debtor generates no operational revenue but has carried interests in two portfolio companies.

16.     The relevant inquiry on the second prong asks whether the debtor will be reestablished as an ongoing business, not whether a future liquidation of its assets would result in a positive distribution. *See* 7 Collier on Bankruptcy ¶1112.04[6][a][ii] (16th ed.) ("Rehabilitation

---

[4] The Debtor has announced its attention to increase its monthly budget in its opposition to the Motion. The Debtor claims it will start paying $1,400 a month although it did not pay this expense prior to the filing. (Opp. Br. ¶14). The Debtor does not disclose to whom it will pay these funds. The Debtor also claims that it reduced its expenses from some pre-petition higher amount (*id.* at ¶9(d)); this claim is unsupported by citation to any evidence.

is not another word for reorganization. Rehabilitation means to reestablish a business. Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not mean liquidation.") Importantly, the Debtor's prediction of litigation success does not satisfy the rehabilitation prong, regardless of the Debtor's subjective beliefs about the merits of its claims. *See A. Illum Hansen, Inc. v. Tiana Queen Motel, Inc. (In re Tiana Queen Motel, Inc.)*, 749 F.2d 146, 151 (2d Cir. 1984) (debtor's "boundless confidence" in its ability to reorganize not insufficient to support a finding that rehabilitation is possible); *In re FRGR Managing Member LLC*, 419 B.R. 576, 581-85 (Bankr. S.D.N.Y. 2009) (finding that the debtor could not establish likelihood of confirming a plan of reorganization predicated on succeeding on its litigation claims in a timely fashion regardless of the merits of those claims); *In re Strawbridge*, No. 09-17208, 2010 WL 779267, at *4 (Bankr. S.D.N.Y. March 5, 2010) ("Nor may [the debtor] finance a plan ... through potential recovery of her litigation claims pending in the district court").

## II.     THIS CASE WAS COMMENCED IN BAD FAITH

17.     Movants also argued that the case was commenced in bad faith, primarily because it is primarily two-party dispute permeated with insider transactions. (Motion at ¶¶43-50). Movants relied upon the six factors that numerous bankruptcy courts in this circuit, and elsewhere, have examined specifically when considering Chapter 11 cases filed to pursue an appeal. *In re Sletteland*, 260 B.R. 657, 663 (Bankr. S.D.N.Y. 2001); *see also In re Abir,* No. 07-12766, 2007 WL 4556909, at *7 (Bankr. S.D.N.Y. Dec. 20, 2007); *In re Fraternal Composite Serv., Inc.*, 315 B.R. 247, 252 (Bankr. N.D.N.Y. 2003).

18.     The Debtor ignores these cases and instead relies upon the Fourth Circuit's decision in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), which generally discusses a subjective and objective test of bad faith. (Opp. Br. 19-20). Other than distinguishing the facts of this case from *Carolin* (Opp. Br. 20-21), the Debtor does not explain how this test differs from the *Sletteland*

factors or how the *Carolin* test supports its position. *Carolin* itself holds that the Debtor's subjective intent must be derived from objective factors, factors which are consistent with the *Sletteland* factors. *Carolin*, 886 F.2d at 704-06.[5]

19.     Moreover, *Carolin* addressed (and ultimately affirmed dismissal of) an eve-of-foreclosure bankruptcy filing, as opposed to a debtor who files a Chapter 11 case merely to continue a two-party dispute in state courts. *See In re 68 West 127 Street LLC*, 285 B.R. 838, 847 (Bankr. S.D.N.Y. 2002) (distinguishing that circumstance from a two-party case and citing *In re Briarpatch Film Corp.*, 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) for an example where the "debtor was in bad faith when [the] only reason for its filing bankruptcy was to relitigate merits of state court decision; proper remedy was to appeal in state court").

20.     As Judge Feller explained in *In re HBA East, Inc.*, 87 B.R. 248, 258 (Bankr. E.D.N.Y. 1988), two-party disputes do not belong in Chapter 11:

> These [two-party dispute] Chapter 11 cases do not represent efforts pitched to a "business's reorganization" or to "restructure a business's finances." They are essentially a two-party civil lawsuit involving non-bankruptcy law brought in the bankruptcy court in the guise of being a reorganization of some sort under Chapter 11. Chapter 11 was never intended to be used as a fist in a two-party bout. The Chapter is entitled reorganization not litigation.

21.     As the Court can see from the briefing on this Motion, the Cash Collateral Motion, the Retention Applications, almost every issue in this case is suffused with the litigation between Lyrical, and its manager, and the Debtor, and its insiders. There is no plan for the reorganization

---

[5] To the extent the Debtor is implying that a party must prove the Debtor's internal, malicious intent to satisfy to justify a finding of cause, this would be incorrect. *See, e.g., Sapphire Dev., LLC v. McKay*, No. 15-1570, 2016 WL 389961, at *8-9 (D. Conn. Feb. 1, 2016) (concluding, following analysis of *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222 (2d Cir. 1991) and *C-TC 9th Ave. P'ship*, 113 F.3d at 1304, that under Second Circuit precedent "*either* subjective bad faith or objective futility provides a sufficient basis for dismissal*"); see also In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) ("Bad faith filing does not itself mean bad mind or malicious activity … but simply the causing of a reorganization proceeding to be filed that does not fit within the intended scope of chapter 11 relief….")

of the Debtor other than to succeed in the Debtor's litigation with Lyrical and Keswin and to hopefully distribute the resulting gain to the Debtor's insiders.[6]

22.     This is why bankruptcy courts in this district, as elsewhere, routinely reject Chapter 11 as an appropriate tool to resolve what are primarily two-party disputes, particularly where they can be resolved through the state court appellate process. *In re Briarpatch Film Corp.*, 281 B.R. 820, 834-35 (Bankr. S.D.N.Y. 2002) (debtor cannot use bankruptcy as "sword" to challenge unfavorable judgments in lieu of appealing); *In re Bridge to Life, Inc.*, 330 B.R. 351, 356-57 (Bankr. E.D.N.Y. 2005) ("A Chapter 11 filing may not be used as a litigation tactic to avoid the posting of a supersedeas bond. … Nor may a Chapter 11 filing be employed to obtain an upper hand or leverage in litigation with another party or to provide an alternative judicial forum for such litigation"); *In re Purpura*, 170 B.R. 202, 207 (Bankr. E.D.N.Y. 1994) ("Where, as here, a debtor's Chapter 11 effort involves essentially a two party dispute based on state law, and the filing for relief represented a litigation tactic to stall and impede the enforcement of legal rights against the debtor [pending state court appeal], dismissal for 'cause,' *i.e.*, a bad faith filing, is warranted"); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984) (bankruptcy case commenced to relitigate lost motion in civil litigation "as a substitute for a supersedeas bond" is "an impermissible use of Chapter 11").

23.     In addition, the numerous pre-petition transfers to insiders also weighs in favor of cause. (*See* above ¶¶9-10). *See Sletteland*, 260 B.R. at 664 ("a core reason for finding a debtor in bad faith."). In fact, the Debtor seems to concede that it transferred the security interests to the Mehta/ Shalov parents during the insider preference period specifically to impair Keswin's ability

---

[6] The Debtor's contention that the case must remain here to provide a distribution to Whitten is risible given the Debtor's stated intention to challenge the Whitten claim as frivolous. Virtually all proceeds from the Debtor's projected grand-slam victory over Lyrical and Keswin will go to the Debtor's insiders (with a portion going to the Debtor's creditor-lawyers).

to recover (although the Debtor characterizes this as an entirely justifiable defensive maneuver).[7] The transfer of those security interests to the parents – and the decision to not challenge them (*see* Cash Coll. Mot. [ECF No. 3] at ¶¶23, 24; Shalov Decl. at ¶33) – has potentially removed $3.2 million from the reach of creditors.

24.    The Debtor argues that Movants have not proven or conclusively established the fraudulent, avoidable or improper nature of the transfers. (*See, e.g.*, Opp. Br. ¶¶22, 25). This is a red-herring. First, the Debtor bears the burden to establish its good faith. *Clear Blue Water, LLC v. Oyster Bay Mgmt Co., LLC*, 476 B.R. 60, 68-9 (E.D.N.Y. 2012) ("if the issue is whether the petition was filed in good faith, the burden shifts to the debtor to demonstrate that the petition was filed in good faith."); *In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) ("[O]nce the good faith of a debtor is called into question, the burden shifts to the debtor to demonstrate that the petition was filed in good faith.")

25.    Second, the facts surround these transfers are almost entirely within the possession of the Debtor (and its insiders). As noted above, the Debtor has given incomplete, partial and misleading statements concerning these transfers and has failed to comply with its full disclosure requirements. Movants have shown that there are serious issues with respect to these transfers that merit investigation. (*See* Motion at ¶¶27-36, 46). In response, the Debtor has largely responded

---

[7] *See* Opp. Br. 10-11 ("Knowing that Keswin may take such action to damage the Debtor, the legitimate creditors who loaned the Debtor far more money than Keswin … and made additional loans at the time of the UCC fillings filed their UCC-1 Financing Statements.") Movants do not agree at all with these statements. The parents had no security interest to file for their alleged unsecured advances until nine years later in May 2015 when the Debtor gave it to them for no or unclear consideration. The security interests were granted shortly after Keswin asserted his entitlement to payment, and suffer from numerous unexplained deficiencies. There has been no evidence that the parents made additional loans to the Debtor at the time of their UCC filings. Finally, contrary to the Debtor's suggestion, these security interests are not at all comparable to Keswin's. The Debtor granted a security interest to Keswin, and Keswin originally filed such interest *contemporaneously* with his loan. The Debtor's *only* challenge to Keswin's refiled security interest is that it seeks payment of a debt outside the statute of limitations. However, the Debtor repeatedly, in writing, tolled the limitations period by promising to pay Keswin's loan once an investment achieved a liquidity event (which occurred here with Revolabs). (*See, e.g.*, Motion ¶¶14, 16).

with invective. To repeat, the Debtor has already declared that it will not challenge the transfers of security interests to the parents.[8] (*See* Motion at n.9).

26.    Furthermore, where the Debtor's business is merely a shell, Chapter 11 is inappropriate. *Syndicom*, 268 B.R. at 52. Here, the Debtor's primary, if not exclusive declared assets, are (1) its Delaware Appeal, (2) its economic interest in a future sale of Rethink, an investment managed by Lyrical, and (3) its economic interest in a future sale of Nourish, an investment that the Debtor proposes to be managed by ALG Fund. Thus, while the Debtor may possibly obtain funds in the future, the Debtor's receipt of such funds will not derive from ongoing business activities of the Debtor.

27.    Finally, a plan to win a litigation (on appeal) and subsequently use the proceeds to fund a plan of reorganization does not show a reasonable prospect of confirming a plan within a reasonable time. *Cf. In re 68 West 127 Street LLC*, 285 B.R. 838, 848 (Bankr. S.D.N.Y. 2002) (submitted valuation evidence underlying a proposed plan was credible, thus forestalling related need to lift the automatic stay for bad faith).[9]

### III.    THE DEBTOR CANNOT USE KESWIN'S CASH COLLATERAL

28.    The Debtor does not dispute it cannot use Keswin's cash collateral without his consent and that it cannot adequately protect him. Without the ability to use cash collateral, the

---

[8] The Debtor argues that its good faith is evident from its having filed its Schedules/SOFA, a bar date motion, retention applications, and a stay relief motion. (Obj. at ¶34). This cannot be the law, and the Debtor has not cited a single case standing for the proposition that a debtor can avoid dismissal on bad faith grounds merely by filing documents required by the Bankruptcy Code and Rules to administer a bankruptcy case. Such a ruling would be would be particularly inappropriate here, where the Debtor has in fact failed to make mandatory disclosures on a timely basis. *See* note 3 and accompanying text, *supra*; 11 U.S.C. § 1112(b)(4)(F) ("cause" includes "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter").

[9] This is not a motion to lift the automatic stay and as stated in the Motion, the Debtor has not identified any asset that is at risk of foreclosure, even if the Debtor failed to post a bond or otherwise obtain a stay from the Delaware Supreme Court. Moreover, the Court can simply convert to Chapter 7, if it determines that such protection is warranted. Nevertheless, for the reasons identified in the *68 West 127 Street* decision, the two standards of bad faith are related and can inform each other.

Debtor cannot retain its proposed counsel or pursue its appeal, making relief under section 1112(b)(1) appropriate. Nor would it be fair or appropriate to employ Keswin's cash collateral to fund litigation against himself and Lyrical.

## **CONCLUSION**

This case should be dismissed or converted.

Dated: April 5, 2016  
       New York, New York

Respectfully submitted,

 /s/ Avery Samet  
Bijan Amini  
Avery Samet  
Jeffrey Chubak  
STORCH AMINI & MUNVES PC  
2 Grand Central Tower  
140 East 45th Street, 25th Floor  
New York, New York 10017  
(212) 490-4100

*Attorneys for Lyrical Opportunity Partners, L.P. and Jeffrey Keswin*